NEW BEDFORD DEFENSE PRODUCTS
DIVISION OF the FIRESTONE TIRE
& RUBBER COMPANY

v.

LOCAL NO. 1113 OF the INTERNA-
TIONAL UNION, UNITED AUTOMO-
BILE, AIRCRAFT AND AGRICUL-
TURAL IMPLEMENT WORKERS OF
AMERICA (UAW, AFL-CIO), et al.

Civ. A. No. 58-70.

United States District Court
D. Massachusetts.

Feb. 27, 1958.

Stuart Macmillan, William R. King, Haussermann, Davison & Shattuck, Boston, Mass., for plaintiff.

Harold B. Roitman, Boston, Mass., for defendant.

WYZANSKI, District Judge.

In most general terms, the present controversy is whether under § 301 (a) of the Labor Management Relations Act of 1947, 61 Stat. 156, 29 U.S.C.A. § 185 and the Declaratory Judgments Act, 28 U.S.C. § 2201 this Court (1) should declare that a grievance claim now being presented for arbitration by two labor organizations is outside the scope of arbitration clauses in a collective bargaining agreement they made with an employer, or alternatively, (2) should order the employer to submit to arbitration of that claim. Basic to both questions is the issue whether the arbitration would involve something more than an interpretation or application of a collective bargaining agreement.

From an agreed statement of facts, supplemented by exhibits received in evidence and also by admissions of counsel in open court, this Court finds the facts set forth in the following numbered paragraphs.

1. The Firestone Tire & Rubber Co. is an Ohio corporation. It operates in Massachusetts the New Bedford Defense Products Division, where it is engaged in industry "affecting commerce", within the meaning of § 2(7) of the Labor Management Relations Act of 1947, 29 U.S.C.A. § 152(7). Although that Division is not a corporate entity, it is the name through which the corporation has sometimes done business, made contracts, and even, as in this case, brought suit. Whenever the Division has acted in making agreements or taking action in court, the corporation has either authorized or ratified that conduct of the Division. [See Defendant's Counterclaim, Count I, Par. A., and the Answer filed not by the Division but by "The Firestone Tire & Rubber Company", Par. 1.]

2. International Union United Automobile, Aircraft, and Agricultural Implement Workers of America is a voluntary, unincorporated labor association. Local 1113 is a "part" of that International, has a "charter" from it, and is also a voluntary, unincorporated labor association. Both the International and the Local are "labor organizations", within the meaning of § 2(5) of the Labor Management Relations Act of 1947, 29 U.S.C.A. § 152(5). Members of Local 1113 are employed by Firestone at its New Bedford Division. And the National Labor Relations Board has certified the International (not, be it observed, the Local) as the exclusive bargaining representative of an appropriate unit of employees of Firestone at the New Bedford

Division. [See Defendant's Counterclaim, Count I, Par. B., and Firestone's Answer, Par. 1.]

3. All parties to this litigation agree that as of April 9, 1956 Firestone and the International entered into a collective bargaining agreement. [Defendant's Counterclaim, Count I, Par. D., and Firestone's Answer, Par. I.] However, the preliminary recitals in and the signatures to the agreement itself indicate some confusion as to whether the Division and the Local were also parties. Despite the language of the contract, the Division clearly was not, and, (not being a voluntary association or a legal personality) could not be, a party. As to the Local the question is more doubtful. But, on the basis of the recital in the contract, the agreed statement of facts, the exhibits, and the trial brief of Firestone, this Court finds that the Local as well as the International is a party to the collective bargaining agreement.

4. The following are relevant provisions of that agreement:

### "Article I

#### "Recognition, Union Security and Check-off

"Section 1

"The Union, [meaning thereby the International] having been certified by the National Labor Relations Board as the representative of employees in the appropriate bargaining unit, the Company recognizes the Union as the exclusive representative of all employees in such unit for the purposes of collective bargaining with respect to rates of pay, wages, hours of employment and other conditions of employment."

"Section 4

"Any laid-off employee on the recall list, who was a member of the Union at the time he was laid off, and who is later recalled and reinstated on the active payroll shall, as a condition of employment, maintain his membership in the Union to the extent of paying Union dues, including initiation and reinstatement fees and monthly dues.

### "Article II

#### "Grievance Procedure

"Section 1

"Any employee who believes he has a justifiable request or complaint shall first refer the request or complaint to his supervision, with or without his Union steward being present; provided, however, that the Union steward will have the opportunity to be present if the adjustment, if any, shall not be inconsistent with the terms of this Agreement.

"Section 2

"If, after the discussions required in Section 1 above, the problem is not settled and is to be processed through the grievance procedure, then the first step shall be:

"(a) The employee and/or the Union steward shall present the grievance to the foreman of the affected department. If the matter has not been satisfactorily settled, the next step shall be:

"(b) The Union steward either directly or through the foreman may make an appointment with the department manager for a meeting during which a further attempt will be made to settle the grievance. At the time of making the appointment the Union steward either directly or through the foreman will submit to the department manager the grievance in writing signed by the employee and the Union steward. If the matter is not satisfactorily settled, the next step shall be:

"(c) The grievance may be submitted to a meeting of the Grievance Committee and the Industrial Relations Department, during which a further attempt will be made to settle the grievance.

"(d) It is understood that the Local Union President or an International Representative of the Union

may be present at this step and such representative should consult with the parties before submission of a grievance to arbitration.

"Section 3

"(a) In the event any grievance concerning the interpretation or application of this Agreement, excepting such grievances as are not arbitrable hereunder, is not satisfactorily settled through the procedure outlined above, it may be submitted to arbitration upon the written request by the aggrieved party to the other party, with a copy to the impartial arbitrator. The grievance to be arbitrated shall be identified and described in said written request.

"(b) A representative of the Company and a representative of the Union shall select an impartial arbitrator for a term mutually agreed upon by the representatives.

"(c) The decision of the impartial arbitrator shall be final and conclusive upon the Company, the Union and the affected employee or employees.

"(d) The impartial arbitrator shall have no power to add to, subtract from, or modify any provision of this Agreement.

"(e) Matters involving the general wage scale or differentials in the maximum hourly rates which are established at the effective date of this Agreement shall not be a subject for arbitration."

"Article VII

"*Seniority*

"Section 1

\*    \*    \*    \*    \*    \*

"(b) The term 'active payroll' as used in this Agreement means the list of employees who have qualified to receive wages from the Company and who have not been removed from the list due to discharge, quit, layoff, leave of absence, transfer to inactive payroll.

"Article VIII

"*Vacations*

"Section 1

"(a) Employees who are on the active payroll on October 31 of the current year, and who previous to that date have completed one (1) year's seniority and have worked at least six (6) months during the previous twelve (12) months, shall receive one (1) week's vacation with pay during the vacation period starting on October 31 of the current year.

"(b) Employees who are on the active payroll on October 31 of the current year, and who previous to that date have completed three (3) years' seniority, but less than fifteen (15) years' seniority, and have worked at least six (6) months during the previous twelve (12) months, shall receive two (2) weeks' vacation with pay during the vacation period starting on October 31 of the current year."

"(g) Employees who are not on the active payroll on October 31 of the current year because they were laid off prior to that date, and who are rehired during the vacation period beginning on October 31 of the current year, will receive a vacation with pay consistent with their seniority, after they have worked six (6) months during that vacation period."

"Article X

"*General Provisions*

\*    \*    \*    \*    \*    \*

"Section 2

"The management of the plant, including the direction of the working forces and all other functions normally incident to such responsibility, is vested in the Company and will be exercised in a manner consistent with the terms of this Agreement.

"Article XI

"This Agreement shall become effective as of April 9, 1956, and shall

continue in full force and effect until April 9, 1959."

5. During the summer of 1957 the members of the Local, their Grievance Committee, their then president, Bernier, and Walkinshaw, the sub-regional director of the International took up with Firestone four miscellaneous grievances. Not having settled them, Bernier acting for the Local indicated by letter dated August 29, 1957 that, failing a satisfactory adjustment, these grievances "are to be submitted" to arbitration. On September 20, 1957 Walkinshaw for the International wrote O'Neil, Director of Industrial Relations at the New Bedford Defense Products Division of Firestone, that "we are agreeable to have Mr. Mark Santer act as the arbitrator in the four (4) cases which were recently submitted to you by our Local Union 1113." September 23, O'Neil replied that "the company is agreeable to have Mr. Mark Santer arbitrate the four grievances mentioned in your letter." Consequently, as of September 23 there was an agreement among the Local, the International, and the Company that Mr. Santer should arbitrate four miscellaneous grievances.

6. In the meantime, about September 16, 1957 due to a curtailment in production caused by the cancellation of government orders, Firestone laid off 113 employees, of whom 93 were covered by the contract. Before October 31 Firestone laid off others. All of these employees who were eligible had received a vacation with pay during 1957 for the year 1956–1957. None of these laid-off employees has been called back to work, or rehired, or had a change of status since October 30, 1957.

7. On October 23, 1957 a member of the Local's grievance committee, on a form appropriate for the purpose, submitted to the foreman a claim, numbered A–48152, that in the case of one of the laid-off employees, Rymszewicz, (selected as a test case) "the Company has violated the terms of the Contract (or Agreement) by refusing to pay a vacation pay to all the employees who have been laid off as a result of the government termination of contract for production with the company. It is the specific request of the Union that the Company immediately compensate the aggrieved parties by paying said vacation pay to the same."

8. October 25, Walkinshaw wrote O'Neil that he had instructed the Local to proceed with this grievance and that if it were not adjusted "we propose to arbitrate the matter". November 6, O'Neil wrote, on the back of an appropriate form, that "In my opinion there has been no violation of contract concerning this grievance." November 7, Walkinshaw notified Mr. Santer that the International and the Local were agreeable to having him arbitrate Grievance No. A–48152. November 20, O'Neil informed Mr. Santer that "It is the Company's position that this grievance is not arbitrable."

9. November 26, 1957 at the Hotel New Bedford, Mr. Santer held a hearing, at which the Local and the International were represented by Walkinshaw, Flinn, then president of the Local, and two subordinates, and the Company was represented by O'Neil and by a member of the bar, Paul Du Charme. The four miscellaneous grievances were heard first. Thereafter Mr. Santer said "We will proceed with the one remaining case, which is with respect to vacation pay. Is it best to have a submission with respect to it?" At this point the Company's lawyer made it clear that its "position is that the issue is not arbitrable under the terms of the agreement." [Ex. 7, p. 3.] "We will argue here today the question of arbitrability. Then we would like to have your decision on the question of arbitrability." [Ibid. p. 4. See also p. 7.] Thereupon the arbitrator took a recess.

10. After the recess, Mr. Santer, summarizing the situation, said "the Company is prepared to arbitrate one thing and one thing only: the question of whether this case is arbitrable." [Ibid., p. 10.] Both the Company's lawyer and Walkinshaw then agreed that the arbitrator should decide "Is Grievance A–48152 arbitrable under the terms

of the agreement." [Ibid., pp. 11–12.] Thereafter all parties gave their respective arguments on this issue.

11. December 11, 1957 Mr. Santer filed an eight-page report and award to the effect that "under the terms of the collective bargaining agreement, dated April 9, 1956, Grievance No. A–48152 is arbitrable."

12. January 14, 1958 Walkinshaw requested the arbitrator to set a date "as soon as possible" to hear the parties on the merits of the "vacation issue".

13. January 16 Firestone, under the name "New Bedford Defense Products Division of The Firestone Tire and Rubber Co., Plaintiff", filed a complaint solely against Local No. 1113. After reciting that "the threatened action of the defendant union to force the plaintiff company to arbitrate the said grievance might result in an award of the additional vacation pay to the employees laid off prior to October 31, 1957," plaintiff prayed for (1) a preliminary injunction restraining the local from taking any action to secure an award by the arbitrator upon the grievance claim for additional vacation pay, (2) a temporary restraining order to the same effect, (3) a declaratory judgment declaring the rights and obligations of the parties to arbitration under the contract, and (4) an adjudication that the arbitrator had no jurisdiction to decide that grievance claim No. A–48152 is arbitrable. From the prayer and from paragraph 1 of the complaint, it appears that plaintiff's counsel premised this Court's supposed jurisdiction primarily on § 301 of the Labor Management Relations Act, 29 U.S.C.A. § 185, but perhaps incidentally on the diversity jurisdiction statute, 28 U.S.C. § 1332, and on the Declaratory Judgments Act, 28 U.S.C. § 2201.

14. January 27 the Local together with the International filed what they denominated an "Answer of Counterclaim." Referring to § 301 of the Labor Management Relations Act, they requested that this Court require plaintiff (1) to comply specifically with the 1957 award of Arbitrator Santer and complete the arbitration of the grievance under the contract, (2) to comply specifically with its 1956 collective bargaining obligation to submit grievance No. A–48152 to a final and binding determination by an arbitrator, and (3) to pay defendant's costs and attorney's fees in this action.

15. January 30, 1958 Firestone itself, not merely the Division, filed its answer to the counterclaim.

The first question is whether plaintiff has stated a case within the jurisdiction of this Court.

Firestone has transparently failed to make allegations or offer evidence adequate to satisfy the diversity jurisdiction statute, 28 U.S.C. § 1332. It has not claimed or proved that all the members of Local 1113 (not to mention all the members of the International) are citizens of a state other than Ohio, where Firestone is incorporated.

More difficult is the question whether Firestone's complaint presents one of those "suits for violation of contracts between an employer and labor organization" provided for by § 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185. If the statute were to be read literally, with emphasis on the word "violation", it would appear that Firestone has not brought a suit of the type described. For there can be no reasonable basis for asserting that the Local or the International violated any contract when they submitted to arbitration grievance A–48152. The 1956 collective bargaining agreement does not make it a breach of contract for a labor organization to ask for arbitration of grievances relating to vacation pay. At most, the labor organizations agreed, in Article II, Sec. 3(d) of the 1956 collective bargaining contract, that they would not offer as a "subject for arbitration" "matters involving the general wage scale or differentials in the maximum hourly rates." And the labor organizations are not asking to have an arbitrator alter the general wage scale. They are seeking an interpretation of, not an addition to, provisions already in the 1956 collective bargaining agreement. Their

conduct is not a breach of contract or, so far as appears, a tort. Cf. Whitehouse v. Illinois Central R. Co., 349 U.S. 366, 372, 373–374, 75 S.Ct. 845, 99 L.Ed. 1155.

But § 301 should not be read literally and with stress on the word "violation." Congressman Hartley, who was the co-author and sponsor of the Labor Management Relations Act, 29 U.S.C.A. § 141 et seq., in responding to an interpellation by Congressman Barden, construed the language which became § 301 as contemplating not only ordinary lawsuits for damages and equitable relief, but also "proceedings * * * brought by the employers, the labor organizations, or interested individual employees under the Declaratory Judgments Act in order to secure declarations from the Court of legal rights under the contract." 93 Cong.Rec. 3656–3657. This enlargement of the letter of § 301 has gained the apparent approval of the Supreme Court and has been used as an essential link in its chain of reasoning in Textile Workers Union of America v. Lincoln Mills, 353 U.S. 448, 455–456, 77 S.Ct. 912, 1 L.Ed. 2d 972. See also 353 U.S. at page 521, 77 S.Ct. at page 952. This enlargement corresponds with the general policy which Congress adopted in the Labor Management Relations Act,—a policy of strengthening labor contracts by using the federal courts to award damages for breaches of those contracts.

From the foregoing analysis it follows that this Court has *federal* jurisdiction to hear Firestone's complaint praying for a declaratory judgment by virtue of the combined authority of 29 U.S.C.A. § 185 and 28 U.S.C. § 2201. But should this Court in its judicial discretion decline to exercise jurisdiction, on the ground that "the declaratory judgment procedure will not be used to preempt and prejudge issues that are committed for initial decision to an administrative body or special tribunal"? Public Service Commission of Utah v. Wycoff Co., 344 U.S. 237, 246, 73 S.Ct. 236, 241, 97 L.Ed. 291; Public Utilities Commission of State of California v. United Air Lines, 346 U.S. 402, 74 S.Ct. 151, 98 L.

Ed. 140. Note 62 Harv.L.Rev. 787, 805–817. In this connection, it is appropriate to consider the rules applied by courts of equity, though, of course, equitable doctrines are not absolutely controlling. Ibid.

■ Ordinarily a bill in equity does not lie to restrain a respondent from proceeding before an arbitrator to secure his decisions both (a) on his own jurisdiction over, and (b) on the merits of a controversy. Post Pub. Co. v. Cort, 334 Mass. 199, 204, 134 N.E.2d 431; Whitehouse v. Illinois Central R. Co., 349 U.S. 366, 373–374, 75 S.Ct. 845, 99 L.Ed. 1155. Cf. Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 52, 58 S.Ct. 459, 82 L.Ed. 638. Sometimes this conclusion is rested on the theory that the complainant has an adequate remedy in another way, that is, it is assumed that the complainant has a right of judicial review if the arbitrator makes an error of law. But this reasoning is unsatisfactory in a situation where the parties have stipulated that the arbitrator's award shall be conclusive and binding. Under such a stipulation there may be no right of full judicial review. Mutual Benefit Health & Accident Ass'n v. United Casualty Co., 1 Cir., 142 F.2d 390, 393–394. In such a situation the better reason for dismissing the bill in equity is that the complainant entered into a bargain to take an arbitrator as the sole and final tribunal; the complainant elected to waive any judicial intervention except where the arbitrator was corrupt or similarly disqualified.

In the case at bar neither of those reasons has any operation. As is explained more in detail later, the present litigants never agreed to accept as final Mr. Santer's determination of the arbitrability of claim No. A–48152. Moreover, here the arbitrator has already made his determination on the issue of arbitrability. Judicial review of his determination is just what the parties contemplated. And there is no valid ground for delaying that review until Mr. Santer has also explored the merits of claim No. A–48152. See Douglas, J., dissenting, Public Utili-

ties Commission of State of California v. United Air Lines, 346 U.S. 402, 405, 74 S.Ct. 151, 98 L.Ed. 140. But see Whitehouse v. Illinois Central R. Co., 349 U.S. 366, 373, lines 10–18, 75 S.Ct. 845, 99 L.Ed. 1155.

Having jurisdiction to declare whether Mr. Santer exceeded his jurisdiction by his award of December 11, 1957, this Court could undoubtedly, if it were necessary, issue the limited preliminary injunction and restraining order prayed for in Firestone's complaint. That is, in its discretion, this Court in order to protect its jurisdiction, or to make its declaration significant, or to save unnecessary duplication, or to avoid meaningless appeals could restrain a defendant from inaugurating elsewhere a new proceeding involving the same grievance now before this Court. Cf. Kerotset Mfg. Co. v. C-O-Two Fire Equipment Co., 342 U.S. 180, 185 note 4, 72 S.Ct. 219, 96 L.Ed. 200. However, in the case at bar issuance of such restraining orders is unnecessary because defendants have stipulated to stay arbitration proceedings until the final disposition of this case.

■ This Court also has jurisdiction to hear the counterclaim filed by the International and the Local. These two labor organizations allege that Firestone has violated (1) a promise to abide by Arbitrator Santer's 1957 award, and (2) an earlier promise in its 1956 contract to submit to arbitration a grievance such as grievance No. A–48152 involving vacation pay for certain laid-off employees. These are allegations that Firestone has violated two contracts. Prayers for specific performance of those alleged promises state a case within this Court's federal jurisdiction. 29 U.S.C.A. § 185; Textile Workers Union of America v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972; Local No. 149 of the American Federation of Technical Engineers (AFL) v. General Electric Co., 1 Cir., 250 F.2d 922.

Having jurisdiction of both the complaint and the counterclaim, the Court has what Chief Judge Magruder at page 927 of his opinion in the Local No. 149 case called an "inescapable obligation to determine as a preliminary matter" what issues the parties agreed to refer to arbitration.[1] The parties may or may not have agreed that an arbitrator shall have the power "to interpret the scope of the arbitration terms of the contract, including questions of whether the dispute at issue is made arbitrable therein and whether applicant has satisfied the contract procedures prerequisite to arbitration * * * Thus the district court must first determine whether the contract in suit puts matters of arbitrability to the arbitrator or leaves them for decision by the court." Local 205, etc. v. General Electric Co., 1 Cir., 233 F.2d 85, 101. And, of course, the district court

---

[1]. This Court has felt obligated to follow the reasoning and ruling in Local 149 because that case was decided in the Court of Appeals only two months ago. However, this Court recognizes that there may be an indirect conflict between the approaches of the Court of Appeals in the Local 149 case and of the Supreme Court in Whitehouse v. Illinois Central R. Co., 349 U.S. 366, 75 S.Ct. 845, 99 L.Ed. 1155. It is often contended that where there is a dispute as to the coverage of an arbitration clause, a party seeking specific performance is entitled to have the trial court order the other party initially to submit the controversy to the arbitrator so that he may "pass on the threshold question of arbitrability." See 250 F.2d at page 926 of Chief Judge Magruder's opinion in Local 149. Justice Frankfurter's opinion in Whitehouse, (although not squarely in point because given in a suit to stay rather than in a suit to compel performance) seems to favor that contention. His approach is to avoid judicial determination except where absolutely necessary; and a judicial determination of the scope of an arbitrator's authority is unnecessary if he decides adversely to the complaining party either the jurisdictional question or the merits of the controversy. Whitehouse v. Illinois Central R. Co., 349 U.S. 366, 373, lines 10–14, 75 S.Ct. 845, 99 L.Ed. 1155. If this approach is followed to the bitter end, the complaint (but not the counterclaim) in the case at bar would have to be dismissed as premature.

must also determine whether the contract between the parties purported to make the arbitrator's award conclusive and binding either on the issue of the arbitrator's jurisdiction or on the substantive issues.

Nothing in the 1956 collective bargaining contract expressly or impliedly gives to an arbitrator appointed thereunder any authority to determine the scope of his own jurisdiction and to make a binding ruling on the question whether a particular substantive issue is arbitrable by him.

■ But the proceedings at the Hotel New Bedford in 1957 present a more troublesome situation. An initial question is whether at that hotel on November 26, 1957 Firestone, the International, and the Local made a contract. The doubt is whether Firestone gave Du Charme authority to bind the corporation, and whether the International and the Local gave Walkinshaw authority to bind the two labor organizations. These questions are to be solved by "federal law, which the courts must fashion from the policy of our national labor laws." Textile Workers Union of America v. Lincoln Mills, 353 U.S. 448, 456, 77 S.Ct. 912, 918, 1 L.Ed.2d 972.

It may be arguable whether ordinarily a lawyer has adequate authority to commit his client to the arbitration of an issue which the lawyer is handling, and whether a sub-regional director has adequate authority to commit an international or local labor organization to an arbitration of a grievance which he is handling. That such authority does exist is indicated by Holker v. Parker, 7 Cranch 436, 3 L.Ed. 396. See 5 Am.Jur. p. 321 note 17. But, regardless of the general rule, in this case the surrounding circumstances show that each spokesman did have adequate authority to commit his principal to a contract conferring upon Mr. Santer the power to determine (not necessarily to determine conclusively) whether he had jurisdiction to hear grievance claim No. A–48152. Such a determination was a step reasonably re-

lated to the presentation of claim No. A–48152. And here the purported agents who acted for the purported principals were acting in the presence of and with the approval of the very persons to whom the principals had committed full authority for the handling of all types of labor grievances. Thus, if originally there was a lack of authority, there was a subsequent ratification by silence.

■ Yet it by no means follows from what has been said that the Company, the International, and the Local agreed in November 1957 to accept as *final* and *conclusive* Mr. Santer's determination of the question whether the vacation pay issue was arbitrable. At the New Bedford hearing no one used the words "final", "conclusive", "binding" or their equivalent, although as shown by Article II, Section 3(c) of the 1956 collective bargaining agreement, these words were familiar enough to all concerned. Nor did the parties in any other way manifest an intention to be conclusively bound Indeed, in the light of its constant objections to the arbitrator's authority, it would have been surprising if the Company would ever have yielded on this point—more particularly since in the Company's view such an agreement to give an arbitrator authority to make a binding and conclusive determination of his own jurisdiction is an unlawful attempt to oust the federal courts from jurisdiction, is unauthorized by any provision of the Labor Management Relations Act, and, if the Act purports so to authorize the statute is to that extent unconstitutional under Article III of the United States Constitution.

From the language used and from the surrounding circumstances, this Court concludes that the parties in November 1957 agreed to submit the question of the arbitrability of grievance claim No. A–48152 to Mr. Santer merely for an advisory opinion rather than for a conclusive and binding ruling of law not subject to judicial inquiry or review. B. Fernandez & Hnos, S. En C., v. Rickert Rice Mills, Inc., 1 Cir., 119 F.2d 809, 815, 136 A.L.R.

351; Mutual Benefit Health & Accident Ass'n v. United Casualty Co., 1 Cir., 142 F.2d 390, 393–394.

We are thus led to the question whether in the opinion of this Court grievance claim No. A–48152 presents a matter subject to arbitration under the 1956 collective bargaining agreement. On this point this Court is in entire agreement with the ultimate conclusion expressed by Mr. Santer in his award of December 11, 1957. It seems clear to this Court that it is a question of the interpretation and application of the 1956 collective bargaining contract whether particular employees laid off before October 31, 1957 are within the group of persons entitled to 1958 vacation pay. Of course, it is equally clear to the Court and perhaps to the arbitrator what the answer to that question is. But this is of no moment. If the labor organizations under an *interpretation* of Article VIII or some other part of the 1956 collective bargaining agreement (and not as a result of some addition to that contract) contend that X is entitled to 1958 vacation pay, the issue is arbitrable under the contract. Issues do not lose their quality of arbitrability because they can be correctly decided only one way.

That conclusion is not contradicted by the final paragraphs of Judge Magruder's opinion in the Local 149 case. In that case "there was no language in the collective bargaining contract to be interpreted and applied." Here the arbitrator is to apply the language of articles in the 1956 collective bargaining contract such as those which provide that vacation pay is available to "employees who are on the active payroll on October 31 of the current year" [Article VIII(a), (b), (c) and (d)] and those which state that "the term 'active payroll' as used in this Agreement means the list of employees who have qualified to receive wages from the Company and who have not been removed from the list due to * * * layoff". [Article VII(1) (b).]

Having concluded that the International and the Local are entitled to pursue before an arbitrator grievance claim No. A–48152, this Court is faced with the issue of who is to be the arbitrator. The parties did not make a designation of any particular person "for a term mutually agreed upon", as contemplated by Article II 3(b) of the 1956 collective bargaining contract. But on November 26, 1957 both the Company's counsel and the representative of the labor organizations agreed that if Arbitrator Santer decided that he had jurisdiction over grievance claim No. A–48152, they would "go forward on the merits." [Ex. 7, pp. 11–12.] Undoubtedly they meant to proceed before Arbitrator Santer. And this Court therefore will direct that Firestone proceed before Mr. Santer.

One final problem remains. The labor organizations claim that they are entitled to monetary damages. Their theory is that Firestone broke a promise in its 1956 collective bargaining contract to submit to arbitration grievance No. A–48152, and also broke its 1957 promise to proceed before Mr. Santer on the merits of grievance No. A–48152, and that these breaches caused the labor organizations to sustain not mere "court costs" but attorney's fees connected with proceedings in this Court. To support this monetary claim for counsel fees, the labor organizations cite no relevant authority. It is true that where two parties have agreed to arbitration, and one revokes the agreement, some courts have held him liable for the expenses the other has incurred in getting prepared for the abortive arbitration. Pond v. Harris, 113 Mass. 114, 122. See Recent Case, 48 Harv.L.Rev. 327, 328. However, the Pond case expressly disallowed recovery for counsel fees "before the ordinary legal tribunals to which the revocation of the defendant compelled him to resort." Indeed, this Court is not aware that any tribunal has gone so far as to allow against one who defaults in his promise to go to arbitration the expenses which the other party has incurred in bringing him to book. Expenses in that category are not usually recoverable in American law courts without statutory authority.

And, in laying down the federal rules to be observed in connection with § 301 of the Labor Management Relations Act of 1947, this Court sees no occasion to depart from traditional American practice.

Decree to enter declaring that grievance claim No. A–48152 shall be arbitrated by Mr. Mark Santer in accordance with the parties' designation of him on November 26, 1957 and in accordance with the procedure stipulated in the April 9, 1956 collective bargaining agreement.