## WHITEHOUSE ET AL. v. ILLINOIS CENTRAL RAILROAD CO. ET AL.

No. 131. Argued February 10–11, 1955.—Decided June 6, 1955.

*Milton Kramer* argued the cause for petitioners. With him on the brief was *Lester P. Schoene.*

*Walter J. Cummings, Jr.* argued the cause for respondents. With him on a brief was *Kenneth F. Burgess* for the Carrier Members, National Railroad Adjustment Board, Third Division, respondents.

*John W. Foster, Herbert J. Deany* and *Joseph H. Wright* filed a brief for the Illinois Central Railroad Co., respondent.

*Clarence M. Mulholland, Edward J. Hickey, Jr.* and *Richard R. Lyman* filed a brief for the American Train Dispatchers' Association et al., as *amici curiae.*

MR. JUSTICE FRANKFURTER delivered the opinion of the Court.

This suit arose out of a proceeding before the National Railroad Adjustment Board. A dispute had arisen between the Order of Railroad Telegraphers (Telegraphers) and the Illinois Central Railroad Co. (Railroad) regarding the latter's employment of a member of the Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employees (Clerks) in a position which Telegraphers claimed should, under its collective bargaining agreement with Railroad, be assigned to a member of Telegraphers. After attempted settlement by negotiation had failed, Telegraphers submitted the dispute, in accordance with the Railway Labor Act, 44 Stat. 577, as amended, 48 Stat. 926, 45 U. S. C. § 151 *et seq.*, to the Third Division of the National Railroad Adjustment Board. Notice of the proceeding was served by the Board on Telegraphers and Railroad. Railroad was then advised by letter that Clerks would prosecute a claim in the event that the rights of Clerks under their agreement with Railroad were adversely affected by the disposition of Telegraphers' claim. Railroad filed a "submission" with the Board asserting that the disputed position involved clerical work of the type customarily performed by clerical forces in the industry and was in fact occupied by a member of Clerks, one Shears. Accordingly, Railroad contended, Telegraphers' claim should be denied, but in any event notice and opportunity to be heard should be afforded Clerks and Shears.

The ten members of the Board, five representing labor and five representing the carriers, deadlocked on the merits and a Referee was appointed as a member of the

Board, agreeably to § 3 First (1) of the Railway Labor Act. When Telegraphers' claim came on for hearing on May 13, 1953, a carrier member of the Board objected that no notice had been served on Clerks pursuant to the requirement of § 3 First (j) of the Act:

> "Parties may be heard either in person, by counsel, or by other representatives, as they may respectively elect, and the several divisions of the Adjustment Board shall give due notice of all hearings to the employee or employees and the carrier or carriers involved in any disputes submitted to them."

This objection was considered *in camera* by the regular members of the Board, the Referee having been excluded, as the District Court found, "in accordance with the custom and practice of the Third Division." An even division resulted and the objection did not carry. After the Board reconvened in public, and in the presence of the Referee, who was not requested to and did not vote on this issue, the carrier member recited that the motion had lost and reiterated his objection, but the hearing resumed.

On May 22, apparently after the hearing had ended but prior to any announcement of a decision, Railroad filed the present action against the Board as such, its individual members, and the Referee. Railroad alleged that the failure to give notice violated the Act and that an award to Telegraphers would not prevent Clerks from prosecuting a similar claim successfully. The complaint sought temporary and permanent injunctions directing the Board to issue notice to Clerks and Shears, and restraining it from proceeding with any disposition of the claim until such notice had been given. Telegraphers, on intervention, contended, *inter alia,* that the means of review prescribed by the Railway Labor Act was exclusive and deprived the District Court of jurisdiction, that Railroad had failed to exhaust its administrative remedies, that

Railroad showed no injury, and that, in any event, under the Act the Board was not required to notify Shears and Clerks. The Board moved to dismiss on the ground that the action was premature, that other adequate administrative and judicial remedies existed and that Railroad was not threatened with irreparable injury.[1]

The District Court held that Shears and Clerks were "employees involved" within § 3 First (j), that it was the "custom and practice" of the Third Division of the Board to deny notice and right to be heard to others than the parties to the specific claim before the Board, and that failure to do so was a denial of due process to the other interested persons and deprived the Board of jurisdiction. It issued a preliminary injunction restraining the Board from proceeding further in the matter unless formal notice was given to Shears and Clerks. On appeal by Telegraphers and the labor members of the Board, the Court of Appeals for the Seventh Circuit held that there could be "hardly any doubt" that Clerks and Shears were "involved" and that any award rendered without notice to them would be void and unenforceable. It rejected the contention that this action was premature because the award might be in favor of Railroad or the proceeding might be dismissed upon the deciding vote of the Referee based on failure to give notice. The court found that the Board had already refused to give notice and held that the Referee had no authority to cast a vote on a "procedural" matter. Since no administrative channel was found available for review of the failure to give notice, the court held that there was no need to await the conclusion of proceedings before the Board. Irreparable

---

[1] The individual members of the Board also filed two diametrically opposite answers to the complaint. The five labor members objected to the grant of a preliminary injunction on grounds similar to those put forth by Telegraphers; the five carrier members generally agreed with the position of Railroad and supported the request for relief.

injury was found in the fact that Railroad would be required to devote time and money to what it deemed an invalid proceeding and was faced with the threat of a conflicting proceeding by Clerks. Emphasizing that this judicial proceeding did not constitute review of an award, but was "in the nature of mandamus" to compel the Board to perform its duty, the Court of Appeals affirmed, one judge dissenting. 212 F. 2d 22. We granted certiorari because serious questions concerning the administration of the Railway Labor Act are in issue. 348 U. S. 809.

We have been urged to resolve the present dispute regarding the requirement of notice to persons not formal parties to a submission to the Board, a dispute which has resulted in numerous conflicting decisions by the Board.[2] This remains a perplexing problem despite the substantial agreement among Courts of Appeals which have considered the question in holding that notice is required to other persons in varying situations.[3] The wording of the notice provision of § 3 First (j) does not give a clear answer. In the context of other related provisions it is certainly not obvious that in a situation like that now before us notice need be given beyond the parties to the submission. See § 3 First (i), (l), (m). Analogy to the law of parties as developed for judicial proceedings is not compelling and in any event does not approach consti-

---

[2] *E. g.*, compare Award No. 2253 (3d Div., Aug. 10, 1943, H. Nathan Swaim, Referee) with Award No. 5432 (3d Div., Sept. 6, 1951, Jay S. Parker, Referee).

[3] See, *e. g.*, *Nord* v. *Griffin*, 86 F. 2d 481 (C. A. 7th Cir. 1936); *Estes* v. *Union Terminal Co.*, 89 F. 2d 768 (C. A. 5th Cir. 1937); *Brotherhood of Railroad Trainmen* v. *Templeton*, 181 F. 2d 527 (C. A. 8th Cir. 1950); *Kirby* v. *Pennsylvania R. Co.*, 188 F. 2d 793 (C. A. 3d Cir. 1951); but cf. *Order of Railroad Telegraphers* v. *New Orleans, T. & M. R. Co.*, 156 F. 2d 1 (C. A. 8th Cir. 1946).

tutional magnitude.  Both its history and the interests it governs show the Railway Labor Act to be unique. "The railroad world is like a state within a state.  Its population of some three million, if we include the families of workers, has its own customs and its own vocabulary, and lives according to rules of its own making."  Garrison, The National Railroad Adjustment Board: A Unique Administrative Agency, 46 Yale L. J. 567, 568–569.

We have also been urged to reverse the holding of the lower court that a Referee may neither be appointed to resolve a deadlock on the question of notice nor, having been appointed to break a deadlock on the merits, vote to dismiss the proceeding because of failure to give the required notice.  Again, we have been asked to judge Railroad's present claim to relief on the basis of irreparable injuries which are alleged to flow from the dilemma in which Railroad will find itself if confronted either by an invalid award or a situation in which no valid award may be obtained.  Railroad asserts that this dilemma is inevitable and will entail continuing industrial friction, the possibility of conflicting awards to both unions, and accumulating claims to back pay or damages which might have been avoided had notice been given and a valid award been rendered.  If the award is against it, Railroad claims that it is at a loss to know whether to comply and be subjected both to suits to enjoin compliance and further Board proceedings by the third party, or to refuse to comply and attempt to defend an enforcement proceeding brought under § 3 First (p).

At the lowest it is doubtful whether these hypothetical injuries are fairly to be deemed irreparable and without other adequate administrative or judicial remedy.  Assuming that the Act permits the Board to consider the claim of one union in the light of competing agreements between

Railroad and other unions, see *Order of Railway Conductors* v. *Pitney,* 326 U. S. 561, does it permit "final and binding" awards to be rendered interpreting both contracts and resolving the independent claims of both unions in a single proceeding? See § 3 First (m). What, beyond proceedings under the Act, may third parties do to challenge an award in which they were improperly not permitted to participate? Compare *Elgin, Joliet & Eastern R. Co.* v. *Burley,* 325 U. S. 711, with *General Committee* v. *Missouri-K.-T. R. Co.,* 320 U. S. 323. To what extent may defects in an award be cured in an enforcement action under § 3 First (p), and are the detriments which are asserted to flow from refusal to comply and reliance upon an enforcement action sufficient to justify judicial intervention? Cf. *Federal Trade Commission* v. *Claire Furnace Co.,* 274 U. S. 160. One thing is unquestioned. Were notice given to Clerks they could be indifferent to it; they would be within their legal rights to refuse to participate in the present proceeding. Clerks here have not attempted to intervene. They have merely stated an intention to bring a separate proceeding in case they are affected by an award in this case. Indeed Railroad refers to an understanding between Clerks and Telegraphers whereby the one will not intervene in proceedings initiated before the Board by the other, but will press its claims independently. And Clerks have joined in a brief of *amicus curiae* which asserts that third parties are not entitled to notice. We would thus have to consider whether those potential injuries alleged to flow solely from failure of Clerks to participate may be the basis for judicial intervention where there is neither a legal right of the complaining party to be free from such injuries nor any assurance that judicial action will afford relief.

These are perplexing questions. Their difficulty admonishes us to observe the wise limitations on our

function and to confine ourselves to deciding only what is necessary to the disposition of the immediate case. Here relief is sought prior to any decision on the merits by the Board. Apart from some lower court's dicta, there is no reason for holding, in the abstract, that any possible award would be rendered void by failure to give notice to an outside even if related interest that cannot be compulsorily joined as a party to the proceeding. The Board has jurisdiction over the only necessary parties to the proceeding and over the subject matter. If failure to give notice be treated as an error, in an award in favor of Railroad it would constitute at best harmless error which could not be made the basis of challenge by Railroad, Telegraphers or Clerks. Railroad's resort to the courts has preceded any award, and one may be rendered which could occasion no possible injury to it. The inevitable result is to disrupt the proceedings of the Board. Its decision has already been delayed for more than two years.

It may be true, as the Court of Appeals observed, that this action must be viewed as "in the nature of mandamus" because mere injunctive relief would not prevent most of the injuries which Railroad seeks to avoid. But mandamus is itself governed by equitable considerations and is to be granted only in the exercise of sound discretion. We hold, in conformity with past decisions, that the injuries are too speculative to warrant resort to extraordinary remedies. See *Eccles* v. *People's Bank,* 333 U. S. 426; *Public Service Comm'n* v. *Wycoff Co.,* 344 U. S. 237; *United States ex rel. Chicago G. W. R. Co.* v. *Interstate Commerce Commission,* 294 U. S. 50. Moreover, among the injuries asserted by Railroad, only the possibility that it is being put to needless expense incident to the pending Board proceeding will necessarily be involved if judicial relief is denied at this stage of the administrative process.

Such expense is inadequate basis for intervention whether by mandamus or injunction. *Myers* v. *Bethlehem Shipbuilding Corp.,* 303 U. S. 41; *Utah Fuel Co.* v. *Coal Comm'n,* 306 U. S. 56.

*Reversed.*

MR. JUSTICE REED, MR. JUSTICE DOUGLAS and MR. JUSTICE MINTON dissent.

MR. JUSTICE HARLAN took no part in the consideration or decision of this case.