In The Matter of JACOBSON.

**BOSTON MUTUAL LIFE INSURANCE COMPANY**

v.

**INSURANCE AGENTS' INTERNATIONAL UNION (AFL–CIO).**

Civ. A. 58–268.

United States District Court
D. Massachusetts.
April 23, 1958.
Judgment Vacated July 24, 1958.

Warner, Stackpole, Stetson & Bradlee, Richard J. Walsh, Boston, Mass., for plaintiff.

Isaac N. Groner, Washington, D. C., for defendant.

WYZANSKI, District Judge.

Relying on § 301 of the Labor Management Relations Act of 1947, 61 Stat. 156, 29 U.S.C.A. § 185 and on the Declaratory Judgments Act, 62 Stat. 964, 28 U.S.C. §§ 2201 and 2202, plaintiff prays for a declaration that under the terms of its collective bargaining agreement with defendant a grievance claim with respect to the discharge of Herbert Jacobson is *not* *subject to arbitration.* Plaintiff also seeks an injunction restraining defendant from proceeding further with respect to arbitration of that claim. Relying on the same statutory sections, defendant prays for a declaration that the claim *is* arbitrable and for an injunction requir-

ing plaintiff to proceed with the arbitration.

The facts have been stipulated. Most of the governing principles of law were recently reviewed in Local No. 149 v. General Electric Co., 1 Cir., 250 F.2d 922 and New Bedford Defense Products Division v. Local No. 1113, D.C.D.Mass., 160 F.Supp. 103. As appears below, the only point which is novel about this case is whether certain so-called questions of law are not, despite their status as law questions, nonetheless appropriate for initial consideration by an arbitrator rather than a judge.

Plaintiff, an employer whose business activities affect commerce, on January 31, 1956 made a collective bargaining agreement, effective from May 20, 1955, with defendant, a union which was the exclusive representative of certain of plaintiff's employees, including Herbert Jacobson. The term of the contract extended to May 20, 1957, and was effective when the employer discharged Jacobson on October 19, 1956. Article XVIII of the contract covered grievance procedure; and Article XIX dealt with arbitration. The full text of the latter article is as follows:

"Article XIX

"Arbitration

"No grievance shall be subject to arbitration unless it involves:

"(a) A dispute about the interpretation or application of any provision of this Agreement or the application of any rule or regulation of the Employer now or hereafter in force.

"(b) The termination, suspension, or disciplinary action against any senior agent.

"In the event that the Company-Wide Relations Committee and the Employer shall fail to reach an agreement on any grievance, either the Employer or the Union may refer said matter to an arbitration board by serving written demand for the same upon the other party. Such demand must be made within fifteen (15) working days after mailing the decision resulting from the meeting of the Employer and the Company-Wide Relations Committee at which the disagreement occurred. In said demand the party demanding arbitration shall name a representative of such party to act on the Arbitration Board. Within five (5) days thereafter the other party shall designate in writing to the party demanding arbitration the name of its representative to serve on the Arbitration Board. The two (2) so selected shall designate a third within seven (7) days thereafter who shall act as the Impartial Chairman of the Board of Arbitration. In case the representative selected by the Union and the representative selected by the Employer are unable to agree within the beforementioned period of time upon the designation of the Impartial Chairman, it is agreed that such Impartial Chairman shall be designated in accordance with the rules of the American Arbitration Association on request of either party. After a demand has been made for arbitration, in the event that the other party fails to designate its representative within seven (7) days of such demand, the party demanding arbitration may request the American Arbitration Association to designate a single arbitrator who shall have the same powers and duties as the Arbitration Board. Said Arbitration Board shall arrive at a decision within ten (10) days, if possible, of the time that evidence and arguments in the matter referred to it for decision are completed and the decision of any two (2) members thereof, or as provided for hereinbefore, the decision of a single arbitrator, if there is but one, shall be final and binding upon the parties; provided, however, that if any matters of law are involved in the decision either party hereto may have recourse to the Courts. The Arbitration Board or the single arbitrator shall have no power to change, amend or alter any of the terms and provisions of this Agreement.

"The expenses and compensation for the Impartial Chairman or the single arbitrator shall be borne equally by the Union and the Employer."

Following Jacobson's discharge on October 19, 1956, the union initiated grievance procedure. On October 31, 1956 the union committee and the employer failed to reach agreement. November 5, 1956 the employer mailed to the union that "decision", if such it can be called. Three days previously, that is on November 2, the union had notified the employer that Currier was its agent for the purpose of giving notice of arbitration. November 7, Currier notified the employer that the Jacobson case "will be taken to arbitration", and named himself as arbitrator. November 13 the employer named as its arbitrator Alajajian. Currier and Alajajian were unable to agree upon an impartial chairman. November 23 the employer received a letter purporting to be from (and, this Court infers, actually from) Currier submitting the names of six suggested arbitrators. The employer did nothing. November 27 the union notified the employer that Cooper was the union's agent for the purpose of giving notice of arbitration. On June 19, 1957 the employer received from Cooper a letter submitting the names of two proposed third arbitrators not previously named and stating that "The union also withdraws the name of Joseph Currier as union arbitrator and replaces him with Matthew Cooper." July 2, 1957 the employer notified the union that according to its construction of the agreement, it was not obliged to arbitrate. October 4, 1957 the union demanded arbitration by the American Arbitration Association, and notified the employer and the association to that effect. The employer seasonably objected, but the Association named an arbitrator and set February 14, 1958 as the date for the arbitration hearing. However, the arbitrator has postponed the hearing and is apparently awaiting the outcome of this litigation.

In the meantime there has been in controversy between the parties a dispute over the discharge by the employer (on the same day as Jacobson was discharged) of one Maurice Mabel. Without reviewing that controversy it will be sufficient to note that there may be cognate issues in the two claims of Jacobson and of Mabel, that the initial steps with respect to each grievance were similar in content and in time and manner of presentation, but that afterwards Mabel's case was submitted by the parties to arbitration by James J. Healey, Arbitrator, and that Mr. Healey on September 6, 1957 made an award favorable to the union.

The essential issue which is presented to this Court, and which, of course, involves only the Jacobson grievance, is whether the union has been so dilatory in following the procedure for arbitration that *as a matter of law* this Court should hold that more than a reasonable time has elapsed, and that therefore *as a matter of law* there is no arbitrable question or, as it might be stated, no question of the interpretation or application of the agreement.

In upholding the affirmative side of this issue, the employer argues that although the grievance claim arising from Jacobson's discharge "comes within the scope of Article XIX 'Arbitration', and was capable of being arbitrated provided the defendant satisfied the procedural requirements incorporated in other provisions of that Article", "this grievance, however, is no longer arbitrable" because the union waited until October 4, 1957 before making demand for arbitration by the American Arbitration Association, and by that date more than a reasonable time had elapsed.

No doubt the union's right to have a claim arbitrated depends upon its pursuing its demand for arbitration both in accordance with the specific time limits prescribed in the collective bargaining agreement, and in accordance with reasonable time limits where no time is specifically prescribed.

This question of what is a "reasonable time" is obviously a question of law in those situations where every reasonable man would reach a conclusion that a reasonable time had elapsed. Cf. Lowry v. Commissioner of Agriculture,

302 Mass. 111, 18 N.E.2d 548. But, though this is less obvious, the question of what is a reasonable time is analytically always a question of law even in those situations where reasonable men might differ as to their conclusions. For in this second situation (as in the first situation where reasonable men cannot differ) what is involved is the prescription of a permissible standard of conduct, not the ascertainment of a disputed fact. Thus it is like the question, so common in negligence cases, whether the defendant's conduct is that of a reasonable and prudent man. And this is now generally recognized as being a question of law, though it is in jury cases the sort of issue of law which is left to the jury if it is susceptible of differing answers by different reasonable men. Holmes, The Common Law, (1881), p. 126; Louis L. Jaffe, Judicial Review: Question of Law, 69 Harv.L.Rev. 239, 246–247.

■ In the case at bar reasonable men might differ as to whether the union proceeded sufficiently diligently to press for arbitration by the American Arbitration Association. Although precise time limits were set by the contract for the preliminary steps prerequisite for arbitration by the Association, no time limit was set for the final step of invocation of the Association for its authoritative ruling. The absence of this time limit in a carefully ˙negotiated agreement suggests that the parties foresaw that in some situations a long delay might be justified; and flexibility to meet varying situations would be desirable. The present case is peculiarly suitable for a flexible rule. · Here there was under way a parallel arbitration involving the cognate discharge of Mabel. The possibility that Mabel's case might produce a decision that everyone would accept as a precedent might strike some reasonable men as being just ground for delaying the arbitration of Jacobson's discharge,—an arbitration which would consume time and money. In short, it seems to this Court that the question whether the union's delay was reasonable is just the sort of question which ought to be left for initial determination by the arbitrator himself,—that is, it is that sort of question of law which is appropriate for the trier of fact. The trier of fact, who in the instant situation is the arbitrator, when he comes to decide what is a reasonable time for a union to prosecute its claim to arbitration will weigh, no doubt, such factors as whether delay subjects an employer to the risk of unduly large amounts of back pay, whether delay beyond the anniversary date of a collective bargaining contract is ordinarily undesirable and whether delay beyond the briefest period is excusable in the light of contractual provisions stressing that between the parties time is regarded as of the essence of their bargain. Cf. Williston, Contracts, 2nd ed., §§ 618, 619; Restatement, Contracts, §§ 235 and 236.

■■ But if this Court is mistaken in the foregoing analysis, and the period of the union's delay was so unwarranted under all the circumstances, that, as a matter of law, no reasonable man could conclude that the union acted diligently, nonetheless this Court's view is that such a determination should be left for initial consideration by the arbitrator, and should not be foreclosed by a court decision preceding the arbitrator's opportunity to rule. Undoubtedly this view squints in a direction different from some of the dicta in Local No. 149 v. General Electric Co., 1 Cir., 250 F.2d 922. In time to come that case may be narrowly limited to situations where a party to a collective bargaining agreement seeks to invoke arbitration of an issue clearly outside the specific provisions of the agreement. Except where the parties have agreed with explicitness beyond plausible controversy that a subject shall not be arbitrated, a court will incline to require the parties to a collective bargaining agreement with arbitration provisions to take their dispute to the arbitrator for his exercise of primary jurisdiction. That is the teaching of Whitehouse v. Illinois Central R. Co., 349 U.S. 366, 373, 75 S.Ct. 845, 99 L.Ed. 1155. Indeed this is an almost necessary

rule if we are to allow the arbitrator to exercise that special expertise which the parties contemplated when they provided for arbitration. In this connection it is relevant to emphasize many of the broad considerations reviewed in the two articles in 69 Harvard Law Review by Professor Louis L. Jaffe, entitled Judicial Review: Question of Law (p. 239) and Judicial Review: Question of Fact (p. 1020). And as Professor Cox has pointed out in his November 14, 1957 address at the University of Cincinnati Conference on Labor Arbitration on Current Problems In The Law of Grievance Arbitration, an arbitrator understands better than the court the frame of reference within which parties bargained, and the inarticulate major premises on which they proceeded. Judges tend to be too dependent on the letter rather than the spirit of a collective bargaining agreement, and often fail to realize that it is an industrial complex which they must interpret, a way of life for partners in an organic relationship.

One minor point remains to be mentioned. The employer suggests that the union lost its right to proceed with the Jacobson grievance because the union first named as its representative Currier and then, before any action in reliance on that nomination had been taken, the union replaced Currier with Cooper. The employer raises the question whether such replacement does not make the Jacobson grievance no longer arbitrable. Here, if ever, is the place to utilize the formula so dear to Chief Justice White: "to state the question is to answer it."

It may not be out of place to observe that if parties to collective bargaining contracts with arbitral provisions rush as readily to court as they have in this case to take advantage of the supposed latitude of § 301 of the Taft Hartley Act, soon not merely the federal courts will be overburdened by these suits, but also the effectiveness of arbitration as a rapid and equitable mechanism for handling labor disputes will be gravely impaired. And thus instead of fulfilling the hopes of its sponsors that § 301 would give new strength and support to labor arbitration, § 301 will be used to undermine and unnecessarily burden arbitral processes.

Decree to be entered denying plaintiff's prayers and granting defendant's prayers for a declaratory judgment that the Jacobson grievance is arbitrable under the contract and for an injunction requiring the plaintiff to proceed forthwith to arbitration before the arbitrator designated by the American Arbitration Association.