The **ORDER OF RAILROAD TELEGRA-PHERS, Appellant,**

v.

**UNION PACIFIC RAILROAD COM-PANY, Appellee.**

No. 7968.

United States Court of Appeals Tenth Circuit.

Oct. 8, 1965.

Milton Kramer, of Schoene & Kramer, Washington, D. C. (Philip Hornbein, Jr., Denver, Colo., with him on the brief), for appellant.

James A. Wilcox, Omaha, Neb. (E. G. Knowles, Clayton D. Knowles, Denver, Colo., and Harry Lustgarten, Jr., Omaha, Neb., with him on the brief), for appellee.

Before MURRAH, Chief Judge, and LEWIS and SETH, Circuit Judges.

SETH, Circuit Judge.

The opinion in this case filed by the Clerk on July 22, 1965, is hereby withdrawn, and the following substituted in its place:

This is an appeal from an order of the United States District Court for the District of Colorado, dismissing the appellant's petition for enforcement of an award of the National Railroad Adjustment Board for failure to join an indispensable party.

The case before us is but another episode in the long-standing jurisdictional struggle between the Brotherhood or Railway and Steamship Clerks, Freight Handlers, Express and Station Employees ("Clerks"), and the Order of Railroad Telegraphers ("Telegraphers"). For a detailed history of the origins of this dispute, see Order of Railroad Telegraphers v. New Orleans, T. & M. Ry., 61 F.Supp. 869 (E.D.Mo.), vacated and remanded 156 F.2d 1 (8th Cir.), cert. den. 329 U.S. 758, 67 S.Ct. 112, 91 L.Ed. 654.

The facts in the controversy before the Board insofar as they are pertinent here are as follows: The dispute grew out of the action of the Union Pacific in 1952 in installing electronic equipment in its various yard offices, including the one at Las Vegas, Nevada, which brought about radical changes in the carrier's car record procedures. In the operation of these machines, a communication function previously performed by the Telegraphers is apparently automatically performed by employees represented by the Clerks. Since the basic function of the machines is to handle clerical work, the job of punching the program cards and operating the machines was assigned to clerical employees. As a result of such action the Telegraphers filed a complaint with the Adjustment Board under 45 U.S.C.A. §§ 151–188.

The Telegraphers' claim before the Board was that the carrier had violated its collective bargaining agreement with the Telegraphers by assigning the work referred to to the Clerks. They prayed that for such violations the carrier be ordered to compensate those employees represented by the Telegraphers to whom the work should have been assigned. In compliance with 45 U.S.C.A. § 153, First (j), the Board served notice upon the Clerks as "employees * * * involved in any disputes submitted to them [the Board]." In reply, the President of the Clerks sent a letter to the Board stating the Clerks' position that the dispute was solely between the carrier and the Telegraphers, involving interpretation of the agreement between the two, and that the Clerks would not therefore participate in the proceedings before the Board. However, the letter added that if as a result

of the proceedings before the Board, work belonging to the Clerks was taken away from them by the carrier, the Clerks would take appropriate action in separate proceedings before the Board.

The proceedings before the Board resulted in an award in favor of the Telegraphers against the carrier, and the carrier was ordered to compensate idle employees covered by its agreement with the Telegraphers. Upon the carrier's failure to comply with the award, the Telegraphers filed this action for enforcement in the District Court for the District of Colorado under 45 U.S.C.A. § 153, First (p). The carrier filed a motion to dismiss the enforcement action on the grounds the Telegraphers had failed to join an indispensable party, namely the Clerks. The court granted the motion and ordered that the Telegraphers should have thirty days from the date of the order to file an amended complaint. Upon failure of the Telegraphers to do so, the court entered final judgment of dismissal with prejudice. It is from this judgment that the Telegraphers appeal. The memorandum opinion and order granting the motion to dismiss with leave to file an amended complaint may be found at 231 F.Supp. 33.

The jurisdiction of the National Railroad Adjustment Board is as set out in the Railway Labor Act, 45 U.S.C.A. § 153, First (i). This subsection provides that the appropriate division of the Adjustment Board shall have authority over disputes between the employees and a carrier arising from interpretation or application of collective bargaining agreements and grievances arising out of such contracts. Thus the Board is empowered to hear disputes which arise from grievances, from the interpretation or from the application of contracts. See Elgin, J. & E. Ry. Co. v. Burley, 325 U.S. 711, 65 S.Ct. 1282, 89 L.Ed. 1886; Id., 327 U.S. 661, 66 S.Ct. 721, 90 L.Ed. 928.

In the case at bar we are concerned with an interunion dispute. Two important cases of this character which have been considered by the Supreme Court are Slocum v. Delaware, L. & W. R. R. Co., 339 U.S. 239, 70 S.Ct. 577, 94 L.Ed. 795, and Order of Railway Conductors v. Pitney, 326 U.S. 561, 66 S.Ct. 322, 90 L.Ed. 318. There have also been a number of similar disputes which are considered in the opinions of the United States Court of Appeals in several Circuits. These cases all basically involve a dispute between two labor unions as to which group is entitled to particular jobs under their individual contracts with the railroad. These positions have come into dispute for the most part, as did the positions in the case at bar, by reason of the above decisions that the authority of the Adjustment Board has been established to entertain disputes of this character, although were the matter one of first impression we would have some doubt.

In the case at bar, under the existing decisions, it was necessary that the Adjustment Board give notice to the Clerks, and this was done as mentioned above. The National Railway Labor Act provides that notice be given to a party "involved" [45 U.S.C.A. § 153, First (j)]. The Act however also provides [45 U.S.C.A. § 153, First (m)] that the award shall be binding on "both" parties, and in subsections (o) and (p) reference is made only to the "carrier" and to the "petitioner." Thus the Act in some respects contemplates that there be but two parties, and the word "involved" in subsection (j) could be construed to refer to only one of these two parties. 9 Stan. L.Rev. 820. However, it has now become established that under the circumstances existing in this case, notice is required to be given to the Clerks Union. See, e. g., Order of Railroad Telegraphers v. New Orleans, T. & M. Ry. Co., 229 F.2d 59 (8th Cir.), cert. den. 350 U.S. 997, 76 S.Ct. 548, 100 L.Ed. 861; Allain v. Tummon, 212 F.2d 32 (7th Cir.); Hunter v. Atchison, T. & S. F. Ry. Co., 171 F.2d 594 (7th Cir.), cert. den. Shepherd v. Hunter, 337 U.S. 916, 69 S.Ct. 1157, 93 L.Ed. 1726. Some courts have grounded this requirement on due process, while others have not placed it on a constitu-

tional basis but have nevertheless made it a requirement. The court, in Order of Railway Telegraphers v. New Orleans, T. & M. Ry. Co., supra, held in part that an Adjustment Board's award was void for failure to give notice to the Clerks, who were there "involved" as they are here. The Supreme Court in Whitehouse v. Illinois Central R. R. Co., 349 U.S. 366, 75 S.Ct. 845, 99 L.Ed. 1155, considered a similar dispute between the Clerks and Telegraphers. Before the Board acted the carrier brought a separate action in the court to enjoin the Board from acting until notice was given the Clerks, the non-petitioning union. The Supreme Court as dicta mentioned the "substantial agreement among Courts of Appeal which have considered the question in holding that notice is required * *", but indicated it was not a constitutional question. This issue is fully covered in the trial court's opinion in the case at bar at 231 F.Supp. 33.

It is however apparent that the requirement that notice be given to the competing union in disputes of this character must be derived from the scope and nature of the issues before the Board. When the Board undertakes to enter the field of jurisdictional disputes as it has done, it is apparent that the issues considered in each petition must necessarily concern at least one other union in addition to the one filing a petition. This "concern" is a very real one by reason of the obvious fact that there is but one job or classification which is sought for the members of two different and competing unions. Since the issues are of this nature, it is understandable that it would be required that notice be given to the non-petitioning union. There is thus an interrelation of notice, parties, and issues. The requirement of notice in the statute and developed in the decisions is a clear indication or measure of the proper scope of the issues before the Adjustment Board, regardless of what procedural or evidentiary limitations it may impose.

The record in this case shows that the Board considered the contract of the petitioning union as if the contract with the non-petitioning union purportedly covering the same job does not exist at all. The jurisdictional dispute was thus decided in a piecemeal manner, the Board ostensibly acting under its jurisdiction to interpret a contract between a carrier and a union. Other contracts for what appeared to be the same jobs were excluded by its rules of evidence. The Supreme Court in a case concerned with the matter of notice and of primary jurisdiction of the Board said:

"We have seen that in order to reach a final decision * * * the court first had to interpret the terms of O.R.C.'s collective bargaining agreements. The record shows, however, that interpretation of these contracts involves more than the mere construction of a 'document' in terms of the ordinary meaning of words and their position. * * * *For O.R.C.'s agreements with the railroad must be read in the light of others between the railroad and B.R.T. And since all the parties seek to support their particular interpretation of these agreements by evidence as to usage, practice and custom that too must be taken into account and properly understood.* The factual question is intricate and technical. An agency especially competent and specifically designated to deal with it has been created by Congress. Under these circumstances the court should exercise equitable discretion to give that agency the first opportunity to pass on the issue." Order of Railway Conductors v. Pitney, 326 U.S. 561, 66 S.Ct. 322, 90 L.Ed. 318 (citations omitted and emphasis added).

This statement is most important in the case at bar because the Supreme Court in the cited case, and in Slocum v. Delaware, L. & W. R. R. Co., 339 U.S. 239, 70 S.Ct. 577, 94 L.Ed. 795, has recognized the authority of the Board to consider these jurisdictional-contract disputes and should be taken as an indication as to how it should be done. If we

are to consider that the Board has authority over this dispute, it must exercise it over the whole dispute at one time, not half at one time with one set of participants, and half at another. The notice requirement whatever its basis, and the Supreme Court's statements in Order of Railway Conductors v. Pitney, 326 U.S. 561, 66 S.Ct. 322, 90 L.Ed. 318, that the contracts of one must be read in the light of the other, lead to the conclusion that the fundamental issues before the Board included those pertaining to the Clerks and to their contract. Their claim to the same jobs requires that the Telegraphers' contract and position be examined in the light thereof before the dispute can be realistically settled. The Clerks for all practical purposes thereby become parties to the administrative proceedings.

The record before us is thus incomplete by reason of the Board's failure to conduct the hearing in a manner so as to receive evidence and to construe the Telegraphers' contract with regard to, and with reference to the Clerks' position and contract. A complete hearing would include all issues, practice, and usage, including the effect of the Clerks' contentions and contract, which are necessary to a complete disposition of the dispute as to all concerned parties. The Board has primary jurisdiction, and must make an initial determination, if petitioned to act, before a court can act on a complete proceeding should it be requested to do so. Slocum v. Delaware, L. & W. R. R. Co., 339 U.S. 239, 70 S.Ct. 577, 94 L.Ed. 795; Order of Railway Conductors v. Pitney, 326 U.S. 561, 66 S.Ct. 322, 90 L.Ed. 318.

The statutory provision that the findings and order of the Board are prima facie evidence of the facts therein stated [45 U.S.C.A. § 153, First (p) ] when given its fullest effect still left the trial court and us with facts as to only part of a dispute, and certainly not enough upon which to base a decision.

The District Court dismissed appellant's petition for failure to join an indispensable party—the Clerks. Had these parties been joined and appeared presumably the matters relating to their position and contract could have been presented to the court thereby filling the same void we find to exist. Our difference with the District Court is only in that the Board should under the doctrine of primary jurisdiction have the first opportunity to consider the entire controversy, including the Clerks' contract.

The disposition of the case by the trial court is

Affirmed.