**SYSTEM FEDERATION NO. 152, RAILWAY EMPLOYEES' DEPARTMENT AFL–CIO, and Ralph E. Gipprich, Individually, and as General Chairman for the Sheet Metal Workers in System Federation No. 152, Railway Employees' Department, AFL–CIO, Plaintiffs,**

v.

**PENNSYLVANIA RAILROAD COMPANY and Transport Workers Union of America, AFL–CIO, Defendants.**

No. 63 Civ. 2348.

United States District Court
S. D. New York.

Sept. 13, 1967.

Mulholland, Hickey & Lyman, Toledo, Ohio, Cohen & Weiss, New York City, for plaintiffs.

Conboy, Hewitt, O'Brien & Boardman, New York City, for defendant Pennsylvania R. Co.

O'Donnell & Schwartz, New York City, for defendant Transport Workers Union of America, AFL-CIO.

MANSFIELD, District Judge.

This is an action to enforce an order of the Railway Adjustment Board ("Board" herein) holding that the defendant Pennsylvania Railroad Company ("Railroad" herein) breached its collective bargaining agreement with plaintiff System Federation No. 152 by assigning certain positions to members of the craft of employees known as Carmen, represented by defendant Transport Workers Union of America, AFL-CIO ("TWU" herein), instead of to members of the Sheet Metal Workers' craft, represented by plaintiff. The occasion for the dispute was the Railroad's closing of its passenger Yards D and E in Pittsburgh, Pa., the reduction of the work force at those yards, and the employment of Carmen rather than Sheet Metal Workers to fill the positions created in Yard C and at the Pennsylvania Station in Pittsburgh as a result of the closing of Yards D and E. The plaintiff claimed before the Board that the old positions were thereby abolished, entitling the Sheet Metal Workers to the positions in the new locations. The Railroad, on the other hand, contended that the new positions constituted merely a relocation or transfer of the old positions, to which the Carmen were entitled, and that in any event the abolition of the old positions should not result in a forfeiture of the Carmen's equity in such positions, as long as the Carmen had not voluntarily vacated the old positions.

The Board, to which the dispute was submitted, reached a deadlock on the issue, which was resolved in plaintiff's favor by an impartial referee. The find-

ing in favor of the plaintiff was based on a footnote in the plaintiff's agreement with the Railroad, which described the work classifications to be performed by Sheet Metal Workers and provided:

"In consideration of the equities accruing to employees of the Carmen's Craft who are now engaged in the performance of such items of work, the allocation of such work to the Sheet Metal Worker's Craft is without prejudice to the rights of employees in the Carmen's Craft, whose assignment on December 1, 1942, included these items of work, to continue to perform the work until they vacate their positions, but as vacancies occur or new positions are created covering these items of work, they will be filled from the roster of the Sheet Metal Worker's Craft."

"No separation of these items of work shall be made where such separation would require the use of more employees than would be required if the work were continued as part of the work of other Carmen's Craft."

Although the TWU, at the Railroad's request, was given notice of the proceeding before the Board and a full opportunity to be heard, it chose not to participate, and the Board does not appear to have had before it, or to have considered, any relevant provisions of the contract in existence between the TWU and the Railroad.

The Railroad now moves to amend its answer, in the light of the decision handed down by the Supreme Court on December 5, 1966 in Transportation-Communication Employees Union v. Union Pacific Railway, 385 U.S. 157, 87 S.Ct. 369, 17 L.Ed.2d 264 ("TCE Union" herein), to plead as a complete defense that the Board did not determine the dispute upon a consideration of the TWU-Railroad contract as well as upon the contract between the plaintiff and the Railroad, and to pray that the case be remanded to the Board to resolve the dispute upon a consideration of both of the contracts involved. In *TCE Union* the Supreme Court held that the Board should re-

solve a jurisdictional dispute between two unions over job assignments by considering the Railroad's contracts with both unions involved, even if one of the unions should fail to appear before the Board after being given notice. Although the plaintiff here contends that the decision merely reaffirmed principles established long ago by the Supreme Court, see Order of Railway Conductors of America v. Pitney, 326 U.S. 561, 66 S.Ct. 322, 90 L.Ed. 318 (1946), rehearing denied, 327 U.S. 814, 66 S.Ct. 525, 90 L.Ed. 1038, and Slocum v. Delaware, L. & W. R. Co., 339 U.S. 239, 70 S.Ct. 577, 94 L.Ed. 795 (1950), the Court's intervening decision in Whitehouse v. Illinois Central R. R., 349 U.S. 366, 75 S.Ct. 845, 99 L.Ed. 1155 (1955), had left the law on the subject in an ambiguous state, as the Supreme Court later acknowledged in *TCE Union* (385 U.S. pp. 164, 172, 175, 87 S.Ct. 369, 17 L.Ed.2d 264). Under the circumstances the Railroad, prior to December 5, 1966, would have been justified in questioning whether the Board was either required to assume jurisdiction over the TWU in the present case or to decide the issue before it upon consideration of any relevant provisions of the TWU-Railroad contract.

▆ In deciding whether to permit the Railroad to amend its answer, we must consider whether the Board might have reached a different result if it had considered the relevant provisions of the TWU-Railroad contract, for if those provisions were identical with the provisions of plaintiff's contract with the Railroad, it would be useless and wasteful exercise to permit an amendment for the purpose of seeking a remand to the Board. Examination of the relevant provisions of the TWU-Railroad contract does reveal that they might have led the Board to a different result. Paragraph V, page 13, of that lengthy agreement, under a heading entitled "CARMEN'S CLASSIFICATION OF WORK", contains, in addition to a provision substantially similar to the above-quoted footnote in plaintiff's con-

tract, upon which the Board relied so heavily, the following provision:

"It is understood and agreed that the position of Carmen referred to herein vacated due to forced reduction, job abolishment and/or rearrangements of forces will not be subject to being filled from the Sheet Metal Workers' roster. The same principle and procedure shall apply to employes of the Carmen's Craft and the Sheet Metal Craft where employes of the Sheet Metal Craft are now performing work of the Carmen's Craft."

Since the foregoing language might be construed, in view of plaintiff's allegations that the Railroad "abolished" the jobs in dispute, as requiring the Railroad to offer the jobs to Carmen rather than to Sheet Metal Workers, the Court, without deciding that question, believes that justice requires that the motion to amend be granted so that the issue may be resolved upon a consideration of the relevant provisions of the TWU-Railroad contract as well as those found in the contract between the plaintiff and the Railroad.

■ Although the present motion to amend was not filed by the Railroad until six months after the Supreme Court's decision in *TCE Union*, the delay does not appear to have been excessive, in view of the liberality with which Rule 15(a) has been construed to permit amendment of pleadings, see Foman v. Davis, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed. 2d 222; 3 Moore, Federal Practice (2d ed. 1948), ¶¶ 15.08, 15.10, particularly for the purpose of interposing an intervening change in the law. Rogers v. White Metal Rolling and Stamping Corp., 249 F.2d 262, 264 (2d Cir. 1957); Hood v. P. Ballantine & Sons, 38 F.R.D. 502 (S.D.N.Y.1965). Furthermore, a portion of the time involved was consumed in obtaining permission from the Court pursuant to Rule 9(*l*) of this Court's General Rules to file the present motion.

The motion is granted.

So ordered.