SYSTEM FEDERATION NO. 152, RAILWAY EMPLOYEES' DEPARTMENT, AFL-CIO; and Ralph E. Gipprich, Individually and as General Chairman for the Sheet Metal Workers in System Federation No. 152, Railway Employees' Department, AFL-CIO, Plaintiffs,

v.

PENN CENTRAL COMPANY and Transport Workers Union of America, AFL-CIO, Defendants.

No. 63 Civ. 2348.

United States District Court
S. D. New York.

Jan. 14, 1970.

See also D.C., 289 F.Supp. 370, D. C., 272 F.Supp. 971.

Mulholland, Hickey & Lyman, Toledo, Ohio, Cohen & Weiss, New York City,

for plaintiffs, Richard R. Lyman, Toledo, Ohio, Stanley M. Berman, Lawrence M. Rosenstock, New York City, of counsel.

Conboy, Hewitt, O'Brien & Boardman, New York City, for Penn Central Co., David J. Mountan, Jr., New York City, of counsel.

O'Donnell & Schwartz, New York City, for Transport Workers Union of America, AFL–CIO, Michael Klein, New York City, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

This matter, if permitted to continue on its present course, threatens to outdistance Jarndyce v. Jarndyce. It involves a controversy between two unions, System Federation No. 152 and the Transport Workers Union (TWU), for the right to certain job classifications for their respective members and a claim by System Federation that the defendant railroad breached its collective bargaining agreement by awarding the jobs to the TWU. The controversy, based on events which occurred in 1958, is still unresolved.

While this Court has had no relationship to the proceedings thus far, it is now asked to clarify an order entered by Judge Pollack on August 30, 1968, which set aside an award of the National Railroad Adjustment Board, Second Division, and remanded the entire controversy to the Board "for a determination of the whole dispute herein, with all parties including the defendant, Transport Workers Union of America, AFL–CIO, to be given notice and an opportunity to be heard in the further proceedings * * *."

The dispute was first presented to the Board in 1959. At that time only System Federation and the railroad were parties to the proceedings. In 1960, after the five carrier and five labor members who constitute the Division certified that they could not agree on an award, the National Mediation Board (NMB), in accordance with statutory procedures, appointed a neutral referee to serve as a member of the Division.[1] The referee participated in the proceedings that followed, and in the final award, which upheld the union's position that the railroad had breached its collective bargaining agreement with System Federation in 1958 by assigning certain jobs to members of TWU. The railroad refused to comply with the award. Subsequent enforcement proceedings, pursued in a dilatory fashion, culminated in the order of Judge Pollack, referred to above, vacating the award.

The basis of the vacatur was the Supreme Court's opinion in Transportation-Communication Employees Union v. Union Pac. R.R. (TCE Union).[2] The Supreme Court there held that in controversies involving competing claims by two unions to work assignments under collective bargaining agreements with an employer railroad, the Board is required to determine the entire dispute in a single proceeding upon adequate notice to all parties involved; the parties, who must be given an opportunity to be heard, are then bound by the Board's final decision. Since the TWU had failed to participate in the Board's proceedings in reliance on prior Supreme Court dictum[3] that a rival union would not be bound if it failed to take part therein, Judge Pollack, following the procedure adopted by the Supreme Court in TCE Union,[4] required that the TWU be giv-

---

1. The procedures for the designation of a referee are set out in 45 U.S.C. § 153 First (l).

2. 385 U.S. 157, 87 S.Ct. 369, 17 L.Ed.2d 264 (1966).

3. For the dictum, disavowed in TCE Union, on which the second union in that case and the TWU here relied, see White-

house v. Illinois Central R. R., 349 U.S. 366, 372, 75 S.Ct. 845, 99 L.Ed. 1155 (1955).

4. Following the Supreme Court ruling in TCE Union, the railroad here moved, and was granted leave, to plead an amended defense that the Board did not resolve the entire dispute based upon the

en notice and an opportunity to be heard upon the remand.

Upon the remand, a new deadlock resulted, this time concerning the status of the referee. The five labor members contended that once the referee was appointed, he continued in office until the controversy was resolved and a final award made. The railroad members, supported by the TWU, took the position that the vacatur of the award rendered the referee functus officio and that the proceedings, since they now also involved the TWU as a participant, were to begin de novo before the ten regular members of the Division, who were to resolve the controversy without participation by the referee unless a new deadlock on the issues occurred. The NMB, called upon to resolve the conflict, neatly sidestepped it by suggesting that the parties return to this court to ascertain whether the remand contemplated that the further hearings before the Board were to be "without a neutral or with a neutral," and so this Court is called upon to resolve the latest deadlock.

It is quite obvious, in view of the history of the proceedings, that further consideration of the controversy upon remand by the Second Division without a neutral participant will again result in a deadlock on the same basic issues that previously led to the appointment of a neutral referee.[5] To subject the parties to this charade would only serve to continue the controversy at its leaden-footed pace and to add to the delay which has plagued the proceeding thus far. The Court construes the order entered in August 1968 to require that the fur-

ther proceedings upon remand be conducted before the full Second Division of the Adjustment Board, including the referee. That the award made by the Board, which included the neutral referee, was vacated and remanded for further consideration of the competing claims of the unions did not deprive the Board of its jurisdiction to determine the controversy. The referee remains a member of the Board until it discharges its statutory duty by rendering a final and binding award.

There is ample authority for this construction. Thus, in 1942 the Acting Attorney General advised the President of the United States that in his opinion:

"[T]he Adjustment Board exercises at least quasi-judicial functions—deciding questions of fact and of law and making awards in actual cases between parties. * * * [I]t is reasonably to be implied in such circumstances that the Board has the authority, similar to that exercised by the courts without express statutory authorization, to correct its own errors when called to attention in due time. * * *

* * * * * *

" * * * When a referee has been appointed he is, and continues to be, for each and every purpose of the particular case * * * a member of the division with equal right and authority so long as the division retains any jurisdiction, that is, at least until the expiration of the time when the award is to be made effective in accordance with its terms." [6]

---

conflicting claims under both union contracts and asked that the controversy be remanded for that purpose. 272 F.Supp. 971 (S.D.N.Y.1967) (Mansfield, J.). On the basis of the newly pleaded defense, the entire controversy was remanded to the Board. 289 F.Supp. 370 (S.D.N.Y. 1968) (Pollack, J.).

5. In its report on the 1966 Amendments to the Railway Labor Act, the House Committee on Interstate and Foreign

Commerce noted: "The overwhelming majority of the cases considered by the divisions require the appointment of a referee, before whom the case is briefed and argued." H.R.Rep. No. 1114, 89th Cong., 1st Sess. 4 (1965). The inability of industry representatives to settle disputes without the intervention of a neutral, as in this case, seems to be the rule rather than the exception.

6. 40 Op.Atty.Gen. 212, 215–16 (1942).

The National Mediation Board administratively has taken positions consonant with the foregoing Attorney General's opinion in situations similar to the instant case.[7]

Adjustment Board proceedings have always been notoriously slow, as the Congressional reports on the 1966 amendments to the Railway Labor Act indicate.[8] And if, as the Supreme Court has observed, "[t]he railroad, the employees, and the public, for all of whose benefits the Railway Labor Act was written, are entitled to have a fair, expeditious hearing to settle disputes of this nature,"[9] this result can best be achieved by requiring the matter to go forward at once instead of permitting a new and unnecessary deadlock, creating a revolving door situation.[10]

The interests of the TWU, which was not a party to the original proceedings, are amply protected under Judge Pollack's order, which, as noted above, specifically provides that the remand is for "a determination of the whole dispute herein, with all parties including the defendant, Transport Workers Union of America, AFL–CIO, to be given notice and an opportunity to be heard in the further proceedings * * *." Whether or not the TWU avails itself of this opportunity, the matter can and should be conclusively determined and finally put to rest, at least at the Board level.

7. The NMB was confronted with the problem of the status of the referee in two prior Second Division cases, Docket Nos. 4476 and 4537 (Award Nos. 4692 and 4693, respectively). The initial question in those proceedings concerned the participation of a previously appointed referee in reopening awards granted by the Division with the referee sitting. This was the situation dealt with in the 1942 Attorney General's opinion and, in reliance on that discussion, the NMB took the position that the referee who had originally made the award should continue to sit to determine whether the case should be reopened. Although the problem currently before this Court does not involve a reopening, the situations are analogous. In both the prior experience of the Board has indicated a deadlock is likely, and in both the referee, having participated in the earlier hearings in the case, is already familiar with the questions likely to arise.

After Docket No. 4537 had been reopened, the question arose whether the referee should continue to sit. In that controversy, on all fours with the present one, the NMB took the position that he should.

8. See S. Rep. No. 1201, 89th Cong., 2d Sess. (1966); H.R. Rep. No. 1114, 89th Cong., 1st Sess. (1965). See also Transportation-Communication Employees Union v. Harriman & Northeastern R. R., 270 F.Supp. 582, 584 (E.D.Tenn.1967).

9. Transportation Communication Employees Union v. Union Pac. R. R., 385 U.S. 157, 162, 87 S.Ct. 369, 372, 17 L.Ed.2d 264 (1966).

10. Prior to the 1966 amendments, district courts could only "enforce or set aside" the Board's orders under 45 U.S.C. § 153 First (p). The 1966 amendments, inserting the new section 45 U.S.C. § 153 First (q), granted the additional power to remand: "The court shall have jurisdiction to affirm the order of the division or to set it aside, in whole or in part, or *it may remand the proceeding to the division for such further action as it may direct.*" [emphasis added] See Transportation-Communication Employees Union v. Union Pac. R. R., 385 U.S. 157, 165 n.4, 87 S.Ct. 369, 17 L.Ed.2d 264 (1966). It is entirely consonant with the purposes underlying those amendments, *see* note 8 *supra*, that the newly granted power be used here to prevent further delay in an already ancient proceeding.

Even prior to the 1966 amendments, the courts have intervened in Board Affairs when purely procedural problems stalemated Board action. *Cf.* Order of Railway Conductors of America v. Swan, 329 U.S. 520, 524, 67 S.Ct. 405, 91 L.Ed. 471 (1947); Brotherhood of R. R. Trainman v. Swan, 214 F.2d 56, 58–59 (7th Cir. 1954); System Federation, No. 30, Railway Employes' Dep't v. Braidwood, 284 F.Supp. 611, 614–617 (N.D.Ill.1968).