Justice Breyer,
with whom Justice Ginsburg joins, concurring in part and concurring in the judgment.
I agree that no unconstitutional taking of property occurred in this case, and I therefore join Parts I, IV, and V of today's opinion. I cannot join Parts II and III, however, for in those Parts the plurality unnecessarily addresses questions of constitutional law that are better left for another day.
In Part II of its opinion, see ante, at 713-715, the plurality concludes that courts, including federal courts, may review the private property law decisions of state courts to determine whether the decisions unconstitutionally take “private property” for “public use, without just compensation.” U. S. *743 Const., Arndt. 5. And in doing so it finds “irrelevant” that the “particular state actor” that takes private property (or unconstitutionally redefines state property law) is the judicial branch, rather than the executive or legislative branch. Ante, at 715; cf. Hughes v. Washington, 389 U. S. 290, 296-298 (1967) (Stewart, J., concurring).
In Part III, the plurality determines that it is “not obviously appropriate” to apply this Court’s “‘fair and substantial basis’ ” test, familiar from our adequate and independent state ground jurisprudence, when evaluating whether a state-court property decision enacts an unconstitutional taking. Ante, at 726. The plurality further concludes that a state-court decision violates the Takings Clause not when the decision is “unpredictab[le]” on the basis of prior law, but rather when the decision takes private property rights that are “established.” Ante, at 728. And finally, it concludes that all those affected by a state-court property law decision can raise a takings claim in federal court, but for the losing party in the initial state-court proceeding, who can only raise her claim (possibly for the first time) in a petition for a writ of certiorari here. Ante, at 727-728.
I do not claim that all of these conclusions are unsound. I do not know. But I do know that, if we were to express our views on these questions, we would invite a host of federal takings claims without the mature consideration of potential procedural or substantive legal principles that might limit federal interference in matters that are primarily the subject of state law. Property owners litigate many thousands of cases involving state property law in state courts each year. Each state-court property decision may further affect numerous nonparty property owners as well. Losing parties in many state-court cases may well believe that erroneous judicial decisions have deprived them of property rights they previously held and may consequently bring federal takings claims. And a glance at Part IV makes clear that such cases can involve state property law issues of con *744 siderable complexity. Hence, the approach the plurality would take today threatens to open the federal-eourt doors to constitutional review of many, perhaps large numbers of, state-law cases in an area of law familiar to state, but not federal, judges. And the failure of that approach to set forth procedural limitations or canons of deference would create the distinct possibility that federal judges would play a major role in the shaping of a matter of significant state interest — state property law.
The plurality criticizes me for my cautious approach, and states that I “cannot decide that petitioner’s claim fails without first deciding what a valid claim would consist of.” Ante, at 717. But, of course, courts frequently find it possible to resolve cases — even those raising constitutional questions — without specifying the precise standard under which a party wins or loses. See, e. g., Smith v. Spisak, 558 U. S. 139, 156 (2010) (“With or without such deference, our conclusion is the same”); Quilloin v. Walcott, 434 U. S. 246, 256 (1978) (rejecting an equal protection claim “[ujnder any standard of review”); Mercer v. Theriot, 377 U. S. 152, 156 (1964) (per curiam) (finding evidence sufficient to support a verdict “under any standard”). That is simply what I would do here.
In the past, Members of this Court have warned us that, when faced with difficult constitutional questions, we should “confine ourselves to deciding only what is necessary to the disposition of the immediate case.” Whitehouse v. Illinois Central R. Co., 349 U. S. 366, 373 (1955); see also Lyng v. Northwest Indian Cemetery Protective Assn., 485 U. S. 439, 445 (1988) (“A fundamental and longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them”); Ashwander v. TVA, 297 U. S. 288, 346-347 (1936) (Brandéis, J., concurring) (“The Court will not anticipate a question of constitutional law in advance of the necessity of deciding it. It is not the habit of the Court to decide ques *745 tions of a constitutional nature unless absolutely necessary to a decision of the case” (citations and internal quotation marks omitted)). Í heed this advice here. There is no need now to decide more than what the Court decides in Parts IV and V, namely, that the Florida Supreme Court’s decision in this case did not amount to a “judicial taking.”